**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

PBI-GORDON CORPORATION,

Plaintiff,

v.

UNITED STATES,

Defendant.

Court No. 25-00140

**COMPLAINT**

Pursuant to Rules 3(a)(2), 5, 7(a), 8, 10, and 11 of the Rules of the United States Court of International Trade, Plaintiff, PBI-Gordon Corporation ("PBI-Gordon") by and through its counsel, Steptoe LLP, hereby states the following claims against Defendant, the United States:

**JURISDICTION**

1.      Plaintiff seeks judicial review of the U.S. International Trade Commission's ("USITC" or "Commission") affirmative final material injury determination in the antidumping ("AD") and countervailing ("CVD") duty investigations of 2,4-Dichlorophenoxyacetic Acid ("2,4-D") from China and India.  This USITC determination was published in the *Federal Register* on May 22,  2025.  *2,4-Dichlorophenoxyacetic Acid ("2,4-D Acid") From China and India,* 90 Fed. Reg. 21,946 (May 22, 2025) ("*Final*

1

*Determination*").  *See also 2,4-Dichlorophenoxyacetic Acid ("2,4-D") from China and India,* Inv. Nos. 701-TA- 710-711 and 731-TA-1673-1674 (Final), USITC Pub. 5618 (May 2025) ("*Views and Final Report*").

2.     The U.S. Department of Commerce (the "Department") published its notice of the antidumping and countervailing duty orders on 2,4-D from China and India on May 27, 2025.  *See 2,4-Dichlorophenoxyacetic Acid From India and the People's Republic of China: Antidumping Duty Orders*, 90 Fed. Reg. 22,243 (May 27, 2025) ("*AD Orders*"); *2,4-Dichlorophenoxyacetic Acid From the People's Republic of China and India: Countervailing Duty Orders*, 90 Fed. Reg. 22,232 (May 27, 2025) ("*CVD Orders*").

3.     The Court has jurisdiction over this action pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i) to review a final affirmative determination made by the USITC under 19 U.S.C. § 1671d(b).  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDARD OF REVIEW

4.     The standard of review, as set forth in 19 U.S.C. § 1516a(b)(1)(B), is whether the determinations, findings or conclusions of the Commission were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

## STANDING OF PLAINTIFF

5.     PBI-Gordon is an U.S. importer of the subject merchandise.

6.      Plaintiff is, therefore, an interested party as defined in 19 U.S.C.

§ 1516a(f)(3) and 1677(9)(A).  Moreover, Plaintiff fully participated in the proceeding

being challenged.  Accordingly, Plaintiff has standing to bring this action under 19

U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

7.      The USITC published its affirmative final determination in the *Federal*

*Register* on May 22, 2025.  *See Final Determination.*  On May 27, 2025, the

Department's AD and CVD Orders were published in the *Federal Register*.  *See AD*

*Orders* and *CVD Orders*.

8.      Plaintiff filed its Summons for this action on June 24, 2025.   Therefore,

Plaintiff commenced this action within the 30-day time period specified in 19 U.S.C. §

1516a(a)(2)(A)(i)(II) and 28 U.S.C. § 2636(c).

9.      In addition, Plaintiff is filing this Complaint within 30 days of filing the

Summons.  Therefore, Plaintiff has also complied with the deadline set forth in 19 U.S.C.

§ 1516a(a)(2)(A)(ii).

## STATEMENT OF FACTS

10.     The underlying agency proceeding began in response to the submission of

petitions seeking the imposition of AD and CVD duties on imports of 2,4-D from China

and India on March 14, 2024.  *See 2,4- Dichlorophenoxyacetic Acid ("2,4-D Acid") from*

*the People's Republic of China and India*, *Petitions for the Imposition of Antidumping*

*and Countervailing Duties* (Mar. 14, 2024).

11.     On March 20, 2024, the USITC published its notice of institution for the preliminary investigation in the *Federal Register.   See 2,4- Dichlorophenoxyacetic Acid ("2,4-D Acid") from China and India*; *Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 89 Fed. Reg. 19,876 (Mar. 20, 2024).

12.     On April 30, 2024, Commerce initiated its AD and CVD investigations.  *See 2,4- Dichlorophenoxyacetic Acid From China and India*: *Initiation of Less-Than Fair-Value Investigations*, 88 Fed. Reg. 73,316 (Apr. 30, 2024).

13.     On May 24, 2024, the USITC rendered its affirmative preliminary injury determination, concluding that there was "reasonable indication that an industry in the United States is materially injured by reason of imports" of the subject merchandise. *See 2,4- Dichlorophenoxyacetic Acid ("2,4-D Acid") from China and India Determinations*,  89 Fed. Reg. 45,923 (May 24, 2024).

14.     On November 26, 2024, the USITC published its notice scheduling the final phase of the injury investigation. *See 2,4- Dichlorophenoxyacetic Acid ("2,4-D Acid") from China and India; Scheduling of the Final Phase of Antidumping and Countervailing Duty Investigations*, 89 Fed. Reg. 93,339 (Nov. 26, 2024).  Subsequently, the USITC issued questionnaires to all known U.S. producers, U.S. importers, foreign producers and exporters, and U.S. purchasers of 2,4-D.  In addition, the USITC posted all of its questionnaires on its website.

15.     Based on these questionnaire responses and other information submitted to

or obtained by the USITC, the USITC Staff issued its Prehearing Report on March 19, 2025.  This Prehearing Report summarized the submitted data as of that point in time.

16.    Thereafter, all interested parties submitted Prehearing Briefs.  PBI-Gordon submitted its Prehearing Brief on March 27, 2024.  PBI-Gordon argued, in part, that: (1) U.S. converters engaged in sufficient production-related activities to be considered part of the domestic industry; (2) the captive production provision does not apply because the downstream article produced from further processing re-enters the merchant market for the domestic like product; (3) Corteva Agriscience, Inc. ("Corteva") made a commercial business decision to suspend supply of 2,4-D acid to the merchant market during the period of investigation; (4) patent protections held by Corteva for 2,4-D Enlist branded herbicides attenuated competition between subject imports and the domestic like product in the downstream market; (5) these conditions of competition, taken as a whole, demonstrate that significant volumes of subject imports did not cause adverse price affects and negative impact to the domestic industry.

17.    A public Hearing was held on April 1, 2025.  The Hearing included sworn testimony given by two PBI-Gordon officials and counsel regarding the competitive dynamics involved in the domestic 2,4-D market.

18.    During the Hearing, among others issues, PBI-Gordon officials reiterated information and data that had previously been provided to the USITC demonstrating that: (1) U.S. converters of 2,4-D acid conducted sufficient production-related activities to be considered part of the domestic industry; (2) Corteva refused to supply 2,4-D acid to U.S. purchasers during the period of investigation in order to disrupt downstream supply of

generic herbicides, and to focus on internal consumption of 2,4-D acid to produce higher-value patent-protected Enlist herbicides; (3)  Corteva reported declining capacity utilization for the production of 2,4-D acid despite public data reflecting increasing acreage of 2,4-D Enlist seed plantings, and increasing disposal volumes of hydrochloric acid.

19.     After the Hearing, the parties submitted Posthearing Briefs.   PBI-Gordon submitted its Posthearing Brief on April 8, 2025.  PBI-Gordon's Posthearing Brief reiterated the arguments made in its Prehearing Brief and during the Hearing.

20.     The USITC Staff's Final Report ("Staff Report") was issued on April 17, 2025.  This Staff Report summarized the submitted data as of that point in time, revising and expanding on the information included in the Preliminary Report, in relevant part.

21.     Thereafter, interested parties filed their Final Comments. PBI-Gordon submitted its Final Comments on April 25, 2025.  PBI-Gordon's Final Comments reiterated the arguments made in its Prehearing Brief, during the Hearing, and in its Posthearing Brief.

22.     On May 2, 2025, the USITC voted three to zero in the affirmative that the domestic 2,4-D industry was materially injured by reason of 2,4-D imports from China and India.

23.     On May 16, 2025, the USITC rendered its conclusion that the domestic 2,4-D industry was materially injured by reason of 2,4-D imports from China and India.  This USITC decision was published in the *Federal Register* on May 22, 2025.  *See Final Determination.*

24.    The written views of the USITC, which include the USITC's rationale for

its affirmative injury determinations, are set forth in the USITC's report.  *See Views and*

*Final Report*.

25.    The Department subsequently published the *AD Orders* and *CVD Orders* on

May 27, 2025.


## STATEMENT OF CLAIMS

### COUNT 1

26.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1

through 25.

27.    Plaintiff demonstrated, using the Commission's standard test, that its

production operations were sufficiently complex and that its investment in the U.S.

market was sufficient to be deemed a member of the domestic industry.  In support of this

position, Plaintiff submitted evidence regarding its investments, employment levels, and

the complexity of its production process, among other factors.  Notwithstanding this

substantial evidence, the Commission concluded that Plaintiff, and other similarly

situated converters, were not members of the domestic industry.

### COUNT 2

28.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1

through 27.

29.    Plaintiff argued that pursuant to 19 U.S.C. § 1677(7)(C)(iv), the

Commission was required to conclude that Corteva's internal sales of the subject

merchandise for the production of downstream formulated products should have been

included as part of the performance of the domestic industry.  Plaintiff demonstrated how

the requirements of the Act, to impose this exception to the general rule that the

Commission consider the domestic industry "as a whole", were not met.

Notwithstanding these arguments, the Commission concluded that the requirements of

the "captive production" provision of the Act were met and thereby excluded a

substantial portion of the domestic market from its analysis of causation of material

injury.

## COUNT 3

30.     Plaintiff hereby re-alleges and incorporates by reference paragraphs 1

through 29.

31.     In several instances, the Commission failed to acknowledge the critical

flaws in the data submitted by Corteva.  Plaintiff identified several instances where

Corteva's reported data, especially regarding its production of the subject merchandise

and its utilization of its production capacity, were either internally inconsistent, or

inconsistent with other record data.  Notwithstanding these arguments, and without a

logical explanation, the Commission accepted Corteva's reported production and capacity

utilization data, which was a critical fact in the Commission's determination of causation

of material injury.  Also critical was Corteva's valuation of its internal consumption of

2,4-D in interim 2024, which – had it been appropriately valued – would have shown a

substantial increase in the company's economic performance at the end of the POI.

Instead, the Commission adopted Corteva's self-serving and unsubstantiated valuation of

these shipments.   Other potential errors identified by Plaintiff, all largely favorable to

Corteva, were not pursued and Corteva's data were used as reported, further undermining

the legitimacy and accuracy of the Commission's determination.

## COUNT 4

32.     Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 31.

33.     The Commission's determination that subject imports caused material injury was fundamentally flawed as the Commission largely ignored record evidence submitted by Plaintiff and other U.S. converters that Corteva voluntarily stopped supplying the U.S. market as early as the beginning of 2022.  Dismissing actual record evidence in the form of contemporaneous emails recounting statements by Corteva as "ultimately speculative and unsubstantiated by record evidence," the Commission instead relied on Corteva's oral testimony at the Hearing regarding its reasons for withdrawing from the U.S. market.  This was so, even though Corteva's explanations for its withdrawal were unsupported by record evidence.

34.     Plaintiff offered two plausible explanations for Corteva's actions, both of which were premised on Corteva's increasing sales of Elist, a more highly profitable, patent protected downstream formulated product.  The Commission compounded its error by misperceiving the nature of Plaintiff and other U.S. converters' arguments regarding the impact of the patented Enlist herbicide and seed products as explaining Corteva's decision to withdraw from the market.

35.     The Commission's failure to give appropriate credence to the record

evidence that Corteva voluntarily withdrew from the U.S. market for 2,4-D for its own

commercial reasons fatally undermined its decision on causation, as the Commission

erroneously attributed to subject imports the consequence of Corteva's own decision,

such as reduced U.S. sales and loss of market share.

## COUNT 5

36.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1

through 35.

37.    The Commission's determinations regarding the volume of the subject

imports and the price effects of subject imports were equally flawed, as both of those

determinations failed to acknowledge Corteva's withdrawal from the market.  Without

acknowledging this critical condition of competition, the Commission's holding on the

increase in subject import volumes and its finding regarding underselling were both

flawed.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

38.     WHEREFORE, for the foregoing reasons, Plaintiff prays that this

Honorable Court: (1) hold that the Commission's *Final Determination* is not supported

by substantial evidence and is otherwise not in accordance with law to the extent alleged

herein; (2) remand the *Final Determination* to the Commission with instructions to enter

a final negative determination; and (3) provide such other relief as this Court deems

proper.


Respectfully submitted,


/s/ Eric C. Emerson


Eric C. Emerson
Mert E. Arkan


**STEPTOE LLP**
1330 Connecticut Ave., NW
Washington, D.C. 20036
202-336-8140


*Counsel for Plaintiff*


Dated: July 24, 2025